UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------X
ELISA WILSON

      Plaintiff,            <u>MEMORANDUM AND ORDER</u>

   -against-               Civil Action No.
                              CV-06-639 (DGT)
FAMILY DOLLAR STORES OF NEW YORK,
INC.,

      Defendant.

---------------------------------X


Trager, J:

    <u>Pro se</u> plaintiff, Elisa Wilson, brought this suit against
her former employer, Family Dollar Stores of New York,
Inc.,("Family Dollar" or "company"), alleging (1) discrimination
based on race, color, gender, religious affiliation; (2) a
retaliatory hostile work environment; and (3) a violation of the
Americans with Disabilities Act("ADA"). By order dated March 29,
2007, plaintiff's race, color, age, and religious discrimination
claims were dismissed, leaving only her claims based on gender
discrimination, hostile work environment, and the ADA. Family
Dollar now moves for summary judgment on those remaining claims.
For the reasons set forth below, the motion for summary judgment
is granted.

## Background

Wilson, a black woman in her mid-fifties allegedly suffering from a back injury, worked at Family Dollar's Brooklyn store for approximately six weeks from August 21, 2004, to October 1, 2004. Wilson was interviewed and hired by Mr. Milton, a manager of another Family Dollar store, and began working at the Brooklyn store before it opened. Wilson claims that during her job interview she told Milton that she did not want any position that would require her to handle money, because, according to Wilson, she had previously been incarcerated for stealing money from her employer and her uncle. Wilson also claims to have informed Milton that a back injury prevented her from lifting anything weighing more than twenty-five pounds, reaching over her head, climbing, bending down, and sitting or walking for an extended period of time. Her back injury does not, however, prevent her from working, caring for herself, or walking short distances between home and work. Milton hired Wilson despite these restrictions, but, according to Wilson, Milton did not specify the position for which Wilson was hired. Rather, according to Wilson, Milton told her that her position would consist of "[g]etting things arranged" and "keeping things in order." Wilson also remembers Milton giving her a copy of Family Dollar's Associate Handbook that contained the company's equal employment opportunity, "open door," and harassment in the workplace

policies; although she claims not to have read it.

When Wilson started working she reported to Marcus Thomas, an operation manager from Family Dollar's North Carolina branch who was temporarily assisting with the opening of the Brooklyn store. At this time, the store was in the early stages of its initial setup. Upon her arrival, she joined approximately thirty-five other employees who had been hired to assist in the set up by assembling the store's interior structures, unloading merchandise from trucks, and stocking shelves. Wilson told Thomas that due to her back injury she could not lift heavy objects, bend, or reach over her head; and as a result, during this set up phase, Thomas asked Wilson only to assist with less-physically-demanding tasks, such as handing tools to coworkers and moving small boxes.

The Brooklyn store opened on or about August 29 or 30, 2004, after which Wilson reported to the manager of the Brooklyn store, George Davis. Wilson was surprised to find that, although she had expressed her unwillingness to handle money and inability to lift heavy objects to both Milton and Thomas, Davis expected her to function as a store associate, a position which generally required operating a cash register, unloading trucks, and stocking shelves – these were essentially the only non-managerial job duties for Family Dollar store employees. Because of Wilson's expressed limitations, Davis did not require her to work

the register or unload trucks, even though her fellow associates performed all of these tasks. Wilson admitted during her deposition that Davis should have terminated her in light of the numerous tasks she was unable and unwilling to perform. <u>See</u> Pl. Dep. at 192-94.

After the store opened, but before Thomas returned to North Carolina, Wilson claims that Davis harassed her. This alleged harassment consisted in Davis calling Wilson a liar in connection with Wilson's placing empty boxes where they did not belong. Wilson reported this incident to Thomas, who, according to Wilson, told her that Family Dollar would not allow employees to be treated in that manner and that he would monitor Davis's behavior. Thomas also told Wilson to call either him or Family Dollar's human resources department if she had more problems with Davis.

Wilson claims that after Thomas left Brooklyn to return to North Carolina, Davis continued to harass her because of her original complaint to Thomas. According to Wilson, this additional harassment consisted in Thomas (1) being egotistical and acting like "he owned Family Dollar," (2) telling Wilson that if she could not follow his directions, she should quit, (3) lacking management training, and (4) burdening her with "extra work loads," i.e., asking Wilson to do the work of her female coworkers who were being remiss. Wilson also claims that

4

Davis harassed her by verbally flirting with the store's younger, female employees – although Wilson admits not to have heard anything that Davis said to them – and by standing so close to them that the sides of their bodies touched.

Wilson admits knowing that she could have contacted Davis or Family Dollar's human resources department to discuss any concerns she had in connection with Thomas's behavior. She was also aware that Family Dollar had a 1-800 number for employees to use to report instances of harassment. But Wilson did not complain to Thomas or the human resources department until October 1, 2004, which was after her employment ended.

Wilson resigned on September 31, 2004, by giving Davis two weeks notice in the presence of two assistant managers. Wilson claims that she resigned because (1) her health was deteriorating, especially with respect to her back injury, (2) she felt she had been disrespected, and (3) she had not been paid in full for the time she had worked at Family Dollar.

On October 1, 2004, the day after Wilson resigned, she returned to Family Dollar to begin what she believed were her final two weeks at the store. Wilson claims that while she was clocking in, Davis ran toward her yelling "get off my clock, you are fired." Then, according to Wilson, Davis slammed into her

and pulled her arm away from the register.[1]  Immediately

following the incident, Wilson called the police.  After speaking

with the parties involved, the policed declined to file any

charges and told Wilson to leave the store.  Wilson then went to

the hospital, but was not admitted.

Finally, although not directly relevant at this stage of the

proceedings, it bears noting that Wilson claims to have been

discriminated against or harassed or both by about half of her

other employers. The individuals who Wilson claims have

discriminated against and harassed her include supervisors,

co-workers, whites, blacks, males, and females. For example,

Wilson recently sued her prior-to-Family Dollar employer for

harassment, retaliation, and race, religious and gender

discrimination; all of these claims were dismissed.

Wilson filed the instant complaint on February 1, 2006,

alleging the following causes of action: (1) race, color, gender,

and religious discrimination; (2) age discrimination under the

ADEA; (3) discrimination based on her disability under the ADA;

(4) hostile work environment; and (5) retaliation.  In lieu of an

answer, Family Dollar filed a motion to dismiss under Federal

---

[1] Wilson's recollection of the altercation contrasts sharply
with Davis's.  According to Davis, in spite of his repeated
requests that plaintiff not clock-in since she was no longer
employed, Wilson resolutely attempted to do so.  Davis admits to
removing Wilson's hand from the clock-in machine but denies
pushing her.  Davis's account of the alleged assault has been
corroborated by the statements of several other employees.

Rule of Civil Procedure 12(b)(6), which was granted in part and denied in part. <u>Wilson v. Family Dollar Stores</u>, No 06 Civ. 639, 2007 U.S. Dist. LEXIS 23083 (E.D.N.Y. Mar. 29, 2007). Wilson's Title VII race, color, and religious discrimination claims were dismissed because of plaintiff's failure to exhaust her administrative remedies. Wilson's age discrimination claim was dismissed for failure to state a claim. Only Wilson's gender discrimination, retaliation, and hostile work environment claims under Title VII and her disability discrimination claim under the ADA survived. Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Wilson's surviving claims.

## Discussion

### (1)

### Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is deemed material "if it might affect the outcome of the suit under the governing law." <u>Browne v. City Univ. of New York</u>, 419 F. Supp. 2d 315, 328 (E.D.N.Y. 2005)

(citing Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001)). Summary judgment is inappropriate where there exist genuine issues of material fact on which basis a reasonable jury could find in favor of the nonmoving party. See id.; DeNicola v. Adelphi Academy, No. 05 Civ. 4231, 2006 U.S. Dist. LEXIS 73301, at *17 (E.D.N.Y. Sept. 29, 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In assessing a motion for summary judgment, the evidence is to be considered in the light most favorable to the nonmoving party and reasonable inferences must be drawn in her favor. See Anderson, 477 U.S. at 255; Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

To defeat a motion for summary judgment, however, the nonmoving party must do "more than simply show that there is some metaphysical doubt as to the material facts," Ferrer v. Potter, No. 03 Civ. 9113, 2005 U.S. Dist. LEXIS 7642, at *9 (S.D.N.Y. May 3, 2005) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); she must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, "conclusory statements, conjecture, or speculation" are insufficient to defeat a summary judgment motion. Commodari v. Long Island Univ., No. 99 Civ. 2581, 2002 U.S. Dist. LEXIS 26225, at *22 (citing Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996)).

## Disability Discrimination

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

> To establish a prima facie case of disability discrimination [under the ADA], a plaintiff must show:(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) [she] suffered [an] adverse employment action because of [her] disability.

Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003). As set forth below, because Wilson has not established that her alleged disability qualifies under the ADA or that she was otherwise able to perform the essential functions of her position, the defendant is entitled to summary judgment on the ADA claim.

"Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity . . . [and] that the limitation on the major life activity is substantial." Toyota

Motor Mfg., Ky. v. Williams, 534 U.S. 184, 195 (2002). "Major

life activities" are those which are "of central importance to

most people's daily lives," id. at 197, and the EEOC regulations

define "major life activities" as "functions such as caring for

oneself, performing manual tasks, walking, seeing, hearing,

speaking, breathing, learning, and working." 29 C.F.R.

§ 1630.2(i).

Wilson argues that her back injury – which impaired her

ability to lift heavy objects, reach over her head, climb

ladders, bend over, or walk or sit for prolonged periods –

qualifies as a disability under the ADA.  It does not.  Courts

have consistently held that similar physical limitations do not

constitute substantial limitations on major life activities.  See

Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644 (2d

Cir. 1998) (holding that there was insufficient evidence for a

jury to have concluded that plaintiffs - who testified that they

had difficulty standing, sitting, lifting, bending, and reaching

– were disabled under the ADA); Glozman v. Retail, Wholesale &

Chain Store Food Emples. Union, Local 338, 204 F. Supp. 2d 615,

621 (S.D.N.Y. 2002) (holding that a plaintiff whose back injury

prevented him from prolonged sitting, bending, and lifting more

than ten pounds was not disabled under the ADA); Zuppardo v.

Suffolk County Vanderbilt Museum, 19 F. Supp. 2d 52, 53, 56

(E.D.N.Y. 1998) (holding that a plaintiff who had a hard time

walking, sitting, standing, pushing, and pulling was not disabled
under the ADA).  Wilson concedes that her back injury did not
prevent her from caring for herself, or even from walking to and
from work.  Moreover, Wilson admits that when she applied to work
for Family Dollar she had also sought data entry positions
elsewhere and that she continued to seek other work after
starting with Family Dollar.  <u>Sutton v. United Air Lines</u>, 527
U.S. 471, 492 (1999) (noting that to qualify under the ADA, a
plaintiff "must be precluded from more than one type of job, a
specialized job, or a particular job of choice.").  Thus, even
assuming that everything Wilson claims about her back injury is
true, she has failed to establish that she was disabled as a
matter of law.

Wilson also bears the burden of establishing that, with or
without reasonable accommodation, she was able to perform the
essential functions of her job at Family Dollar.  If she was
unable to "meet all of [her job's] requirements in spite of her
handicap" she is not a "qualified individual with a disability"
for the purposes of the ADA.  <u>D'Amico v. City of New York</u>, 132
F.3d 145, 151 (2d Cir. 1998) (citing <u>School Bd. of Nassau County
v. Arline</u>, 480 U.S. 273, 287 n.17 (1987)).  She has not carried
that burden.  Family Dollar describes the store associate
position as requiring the ability to unload trucks, stock
shelves, and operate the cash register.  Chidester Cert., Ex. A

(Family Dollar Job Description & Requirements).

Wilson either refused or considered herself unable to do the bulk of what her job required, and she does not even claim otherwise. Indeed, during her deposition, she conceded that she should have been fired on the basis of her inability to perform the necessary aspects of her job:

> [T]o look at it now after going on four years, I think [Davis] should have terminated me before he puts his hands on me, assaulted me. . . . . I don't know what else could have been done. That's something that [Davis] should, as a manager, have determined. Well, since you can't do –– unload trucks, Ms. Wilson, since you cannot climb ladders, since you cannot unload and load u-boats and you can't pick up boxes of bleaches and detergents and so forth, then we don't have anything for you to do here. That's the way a manager should have approached me about it.

Pl. Dep. at 192-94. Moreover, the only accommodation Wilson requested – that she not be required to unload the trucks and lift heavy objects – was granted, even though Family Dollar was under no obligation to do so. Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991) (noting that reasonable accommodation "does not mean elimination of any of the job's essential functions). Thus, because Wilson has not established that she had a qualifying disability or that she was able to perform the tasks required of a Family Dollar store associate, her ADA claim fails as a matter of law.

### Gender Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of gender discrimination, a female plaintiff has the burden of proving that (1) she performed her job satisfactorily (2) but suffered an adverse employment action (3) under circumstances giving rise to an inference of discrimination. <u>See</u>, <u>e.g.</u>, <u>Ford v. New York City Dep't of Health & Mental Hygiene</u>, 545 F. Supp. 2d 377, 388 (S.D.N.Y. 2008); <u>see also</u> <u>Mario v. P & C Food Mkts., Inc.</u>, 313 F.3d 758, 767 (2d Cir. 2002).

Here, Wilson claims that Davis's conduct toward her constituted gender discrimination. In particular, she alleges that Davis (1) showed his male employees more respect than his female employees through his demeanor and tone of voice; (2) called Wilson a liar; (3) stood so close to Wilson's female coworkers that their bodies touched, and flirted with Wilson's female coworkers verbally and with body language, although Wilson admits that she did not hear anything that was said; and (4) terminated Wilson – all based on Davis's discriminatory animus toward woman. Even assuming that with these allegations Wilson has established that she performed her job satisfactorily

but suffered an adverse employment action, because Wilson has offered no credible evidence of anything even vaguely resembling gender discrimination at Family Dollar, her claim fails as a matter of law. She claims generally that Family Dollar, through the behavior of Davis, harassed her and ultimately terminated her because she is a woman but supports her claim with nothing but her own feelings. Indeed, she has testified as follows:

> Q:    Why do you allege Family Dollar
>       discriminated against you because of
>       your gender or sex?
>
> A:    Because they don't seem to have no
>       respect for -- for women.
>
> Q:    And in what way?
>
> A:    Because I don't see none of their women
>       doing the work that -- and mind you, it
>       was just black people working at Family
>       Dollar.
>
> Q:    At that store?
>
> A:    Yes.
>
> Q:    All right. So you think it's more of a
>       racial issue –
>
> A:    They –
>
> Q:    -- or more of a sex issue?
>
> A:    I think it's -- I think it's a racial
>       issue, myself.
>
> Q:    So it's really not a sex issue, it's a
>       race issue?
>
> A.    Well, I -- it's a sex [issue], too,
>       because there's lots of people who don't
>       like women, who don't -- for whatever

reason, they don't like women.  They
don't care to be -- have women over
them.  They don't care to -- to follow
anything women have to say.  Some people
come from cultures where it's okay to
beat women.  Some people come out of
households who grow up watching Mommy
and Daddy fight.  They think that's a
natural part of life.  That's not
natural.  That's not my life.  I had a
rocky road, but nobody be beating on me.

. . .

Q:    You've claimed that Family Dollar has
      discriminated against you because of
      your sex.

A:    Family Dollar hired him [meaning Davis].

Q:    I want to know what facts you have to
      support that claim.

A:    Family – Family Dollar hired Mr. – he is
      – Family dollar is responsible for every
      employee, male, female, black, blue,
      green, brown.  Family Dollar hires
      managers to run their business, to keep
      them from being sued.  That means that
      Family Dollar has an obligation to
      themself to make sure that their people
      on staff have the right amount of
      education, training in its field to pre
      – to prevent certain things from
      happening on their job.

      And Family Dollar hired this man.  I
      don't know I didn't see his credentials.
      I'm not on trial here.  Family Dollar
      should be doing something about Mr.
      Davis.

      So now you're asking for facts.  I'm
      giving you the facts.  I do not read
      minds.  I don't know why Mr. Davis did
      what he did except to know that Mr.
      Davis lost control [regarding his
      alleged assault of Wilson as she was

attempting to clock in on her last day].

Pl. Dep. at 229-30. This testimony reveals only that Wilson believed that sexism existed in society, and that she was a victim of it; it does nothing to substantiate Wilson's claim that Davis treated her disparately based on her gender. Moreover, Wilson has offered no evidence that other female employees believed Davis to harbor a gender bias, or that Davis treated male employees materially differently from female employees based on gender. On the contrary, Davis affirmatively brought a female assistant manager from Family Dollar's Long Island store to work at the newly opened Brooklyn store, which belies Wilson's claim of his bias. See, e.g., Wilson v. Blockbuster, Inc., No. 06 Civ. 800, 2007 U.S. Dist. LEXIS 47704, at *19-20 (W.D. Wash. July 2, 2007) (citing the defendant's appointment of women to positions of responsibility as a significant reason for granting summary judgment on a gender discrimination charge). Thus, Wilson's generalized accusations, without more, fail to support the inference of gender-based discrimination at Family Dollar that is necessary for Wilson's claim to survive summary judgment. See, e.g., Gidron v. New York City Bd. of Educ., No. 05 Civ. 2285, 2007 U.S. Dist. LEXIS 94271, at *33 (E.D.N.Y. Dec. 26, 2007) ("[C]onclusory statements without evidence [about plaintiff's perception of discrimination] are an insufficient basis on which to state a claim of discrimination."); Nugent v. St.

Luke's/Roosevelt Hosp. Ctr., No. 05 Civ. 5109, 2007 U.S. Dist. LEXIS 28274, at *55 (S.D.N.Y. Apr. 18, 2007) (holding that "'[feelings and perceptions] of being discriminated against [are] not evidence' of discrimination") (citing Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999))(alterations in original, internal citations omitted).

### (4)

### Hostile Work Environment

In a related claim, Wilson alleges that Family Dollar, and Davis in particular, subjected her to a hostile work environment on the basis of her gender. To establish a hostile work environment claim under Title VII, Wilson must demonstrate that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Fairbrother v. Morrison, 412 F.3d 39, 48 (2d Cir. 2005)(internal quotations and citations omitted).

The merits of a hostile work environment claim are either assessed cumulatively if plaintiff has set forth "a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [her] working environment" or on the basis of an "extraordinarily severe" single event. Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir.

2000)) (internal quotation marks omitted in original). Factors

for consideration include "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with the employee's work performance."

Harris, 510 at 23. Wilson must also demonstrate that "the

conduct at issue was not merely tinged with offensive

connotations, but actually constituted discrimination because of"

her membership in a protected class. Browne v. City, 419 F. Supp.

2d at 330 (quoting Oncale v. Sundowner Offshore Services, Inc.,

523 U.S. 75, 80-81 (1998) (emphasis in original); see also Alfano

v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]t is axiomatic

that in order to establish a sex-based hostile environment under

Title VII, a plaintiff must demonstrate that the conduct occurred

because of her sex."). And in addition to satisfying an

objective standard, Wilson must show that she subjectively

considered the working environment hostile. See Feingold v. New

York, 366 F.3d 138, 150 (2d Cir. 2004) (requiring that the

contested conduct be "severe or pervasive enough to create an

objectively hostile or abusive work environment, and the victim

must also subjectively perceive that environment to be abusive")

(internal citations and quotation marks omitted).

Wilson bases her hostile work environment claim on the

conduct of Davis, in particular (1) Davis's reference to her as a

liar, (2) his offensive flirtations with Wilson's female coworkers, and (3) the alleged assault that occurred when Wilson tried to clock in after having been terminated. This conduct, however, does not rise to the level of a hostile work environment. With regard to Davis's calling Wilson a liar, it is well settled that "isolated remarks" are not actionable under Title VII." Perez v. Communications Workers of America Local 1109, No. 03 Civ. 3740, 2005 U.S. Dist. LEXIS 42179, at *34 (E.D.N.Y. Sept. 6, 2005) (internal citations omitted); see also Harris, 510 U.S. at 21 ("'[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII.") (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (ellipses and internal quotation marks omitted in original); Perez, 2005 U.S. Dist. LEXIS 42179, at *11, 34 (holding that an employer's reference to his employee as a "liar" in addition to other indicia of harassment were insufficient to sustain a claim of hostile work environment).

As to the alleged assault, it is well established that "occasional episodes of harassment will not merit relief under Title VII." Id. at *34 (quoting Little v. National Broadcasting Co., 210 F. Supp. 2d 330, 389 (S.D.N.Y. 2002)) (internal citations omitted); see also Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992) (specifying

that "the incidents must be repeated and continuous" rather than "isolated" or "occasional").  Not only was Davis's alleged assault an isolated incident but it is also too far removed from the level of an "extraordinarily severe" episode of harassment required to support a hostile work environment claim. <u>See</u>, <u>e.g.</u>, <u>Garone v. UPS</u>, 436 F. Supp. 2d 448, 454, 471 (E.D.N.Y. 2006) (granting summary judgment to deny a hostile work environment claim where the alleged harassment included the unwanted grabbing of the plaintiff's buttocks causing "huge black and blue marks"); <u>O'Neal v. State Univ. of New York</u>, No. 01 Civ. 7802, 2006 U.S. Dist. LEXIS 81654, at *20 (E.D.N.Y. Nov. 8, 2006) (stating that an alleged struggle between an employee and her employer "over the door handle that resulted in the door striking [plaintiff's] knee" was not severe enough to support to a hostile work environment).  Moreover, the assault could not possibly have altered the terms and conditions of plaintiff's employment since it occurred following her resignation and discharge. <u>See</u> <u>Whidbee</u>, 75 F. Supp. 2d at 189, 191 (disregarding an offensive remark made following an employee's resignation as "irrelevant" on the grounds that the "post-employment incident cannot be deemed to have contributed to a hostile environment").

Wilson also alleges that Davis engaged in favoritism and displayed angry facial expressions that made her feel uneasy. While such behavior may be rude and unprofessional, it merely

indicates personal enmity rather than discrimination and thus does not violate Title VII. See Ferrer, 2005 U.S. Dist. LEXIS 7642, at *28 ("Discord based on personality conflicts between co-workers or between a supervisor and an employee is not actionable under Title VII.") (internal citations and quotation marks omitted); see also Ford, 545 F. Supp. 2d at 389 (holding that co-workers' looks and comments such as "stupid fish" are not "objectively indicative of gender animus" and merely indicate "general dislike" for plaintiff).

Likewise, Wilson's allegations that Davis was "egotistical," "believed that he owned Family Dollar," and was unfit for his managerial position, are inapposite to a hostile work environment claim as they merely indicate Wilson's personal dislike for Davis. See Gibson v. Brown, No. 97 Civ. 3026, 1999 U.S. Dist. LEXIS 18555, at *34 (E.D.N.Y. Oct. 19, 1999) ("The plaintiff cannot turn a personal feud into a . . . discrimination case by accusation.") (ellipses in original, internal citations omitted).

Wilson also contends that Davis assigned her "extra work load" and reminded her that she could quit if she did not want to complete her assignments. The extra work consisted of Davis asking Wilson to cover for some of her coworkers who were being irresponsible. Unless plaintiff was subjected to "disproportionately burdensome work assignments," however, allegations of a heavier workload alone cannot support a viable

hostile work environment claim. <u>Garone</u>, 436 F. Supp. at 467

(citing <u>Raniola v. Bratton</u>, 243 F.3d 610, 621 (2d Cir. 2001)).

Considering that Wilson was already excused from several of her

job's essential functions and that Davis did not qualitatively

increase the scope of her employment activities, to occasionally

require plaintiff to assist her co-workers in the performance of

duties that are at the core of her job responsibilities is not to

subject an employee to "disproportionately burdensome work

assignments." <u>Id.</u>; <u>see also</u>, <u>e.g.</u>, <u>Browne v. City</u>, 419 F. Supp.

at 333-34 ("The assignment of a heavier teaching load to

plaintiff for [a given] semester does not constitute an adverse

employment action.").

Finally, Wilson alleges that Davis harassed her by flirting

with the other female employees. These allegations, however, are

not sufficient to demonstrate a hostile work environment. <u>See</u>

<u>Wells-Williams v. Kingsboro Psychiatric Ctr.</u>, No. 03 Civ. 134,

2007 U.S. Dist. LEXIS 23727, at *18-19 (E.D.N.Y. Mar. 30, 2007)

(finding that allegations of continuous sexual conversations

between plaintiff's supervisor and a co-worker were not probative

of a hostile work environment).

Most significantly, however, Wilson has offered no evidence

to establish that any perceived hostility was motivated by gender

discrimination. Rather, her evidence suggests, at most, that she

and Davis did not work well with or like each other – which is

insufficient to survive summary judgment.  <u>See</u> <u>Oncale</u>, 523 U.S. at 80 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination . . . because of . . . sex.'") (quoting 42 U.S.C. § 2000-e-2(a)(1)); <u>Brown v. Henderson</u>, 257 F.3d 246, 256 (2d Cir. 2001) (holding that summary judgment was appropriate where the hostility cited by the plaintiff was "grounded in workplace dynamics unrelated to her sex").

### (5)

### Constructive Discharge

Wilson also makes a claim for constructive discharge, which requires her to establish that Family Dollar deliberately created working conditions that were so intolerable that a reasonable person in Wilson's position would have felt compelled to quit. <u>See</u> <u>Terry v. Ashcroft</u>, 336 F.3d 128, 152 (2d Cir. 2003).  In other words, a successful constructive discharge claim requires a showing not only that Family Dollar was a hostile work environment for Wilson, but that it was so severely hostile to have compelled her reasonably to quit.  <u>See</u>, <u>e.g.</u>, <u>Pa. State Police v. Suders</u>, 542 U.S. 129, 146-47 (2004) (noting that a constructive discharge claim requires a showing of a hostile work environment); <u>Virola v. Xo Communs., Inc.</u>, No. 05 Civ. 5056, 2008 U.S. Dist. LEXIS 30413, at *65 (E.D.N.Y. Apr. 15, 2008) (noting

that a constructive discharge claim "is essentially an aggravated
hostile work environment claim"); Baptiste v. Cushman &
Wakefield, No. 03 Civ. 2102, 2007 U.S. Dist. LEXIS 19784, at *34
(S.D.N.Y. Mar. 7, 2007) ("Where, as here, a constructive
discharge claim is part and parcel of a hostile work environment
claim . . . articulating a claim for hostile work environment is
a necessary predicate to a finding of constructive discharge.")
(citing Pennsylvania State Police, 542 U.S. at 149).  Thus, for
the same reasons that Wilson has failed to establish a hostile
work environment, her constructive discharge claim fails as a
matter of law.


## (6)

### Retaliation

A prima facie case of retaliation under Title VII requires a
showing that (1) plaintiff was engaged in protected activity; (2)
the employer was aware of the activity; (3) the employer took an
adverse action against the employee; and (4) the employee's
protected activity caused the employer's adverse action.  See
Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir.
1993); Brown v. Triboro Coach Corp., 153 F. Supp. 2d 172, 186
(E.D.N.Y. 2001).  Wilson alleges that Davis retaliated against
her for complaining to Thomas about being called a liar in
connection with Wilson's disposal of empty boxes.  Because this

cannot be considered protected activity under Title VII, her
retaliation claim is not viable.

Title VII makes it unlawful for an employer to retaliate
against an employee because that employee has "opposed any
practice made an unlawful employment practice." 42 U.S.C. §
2000e-3(a); see also Cruz v. Coach Stores, Inc., 202 F.3d 560,
566 (2d Cir. 2000) (defining protected activity as "action taken
to protest or oppose statutorily prohibited discrimination.").
In order to demonstrate that she engaged in a protected activity,
plaintiff must show that she "had a good faith, reasonable belief
that [s]he was opposing an employment practice made unlawful by
Title VII." Kessler v. Westchester County Dep't of Soc. Servs.,
461 F.3d 199, 210 (2d Cir. 2006) (quoting McMenemy v. City of
Rochester, 241 F.3d 279, 285 (2d Cir. 2001)). Wilson has offered
no evidence that Davis called her a liar based on any sort of
unlawful discrimination, thus she has not established that his
use of the pejorative was an unlawful employment practice and
cannot therefore substantiate her retaliation claim. See, e.g.,
Almonord v. Kingsbrook Jewish Med. Ctr., No. 04 Civ. 4071, 2007
U.S. Dist. LEXIS 58529, at *30 (E.D.N.Y. Aug. 10, 2007) (holding
that plaintiff's informal complaint to management about being
yelled at and having her accent mimicked "cannot be seen as
opposing action prohibited under Title VII, because Title VII is
not a 'general civility code'") (quoting Oncale v. Sundowner

## (7)

### Discovery Material

Finally, Wilson opposes summary judgment because, she claims, she was denied certain discovery material, in particular, a surveillance tape that recorded the alleged assault, which Family Dollar claims not to have. Whether Wilson was improperly denied access to this tape is irrelevant, however, because in holding that Wilson has failed to establish employment discrimination at Family Dollar, it has been assumed that the alleged assault occurred exactly as she claims, as the summary judgment standard requires. Wilson's claim fails as a matter of law because she has not offered any evidence of discrimination, and a video of the alleged assault would not change that.

### Conclusion

In sum, (1) Wilson's disability discrimination claim fails because her alleged disability does not qualify under the ADA and Wilson has not established that she was otherwise qualified to perform the essential functions of her job; (2) Wilson's gender discrimination claim fails because she has offered no evidence, other than her own feelings, of gender discrimination; (3) Wilson's hostile work environment claim fails because even

26

assuming her allegations are true, she has failed to describe a hostile work environment for the purposes of Title VII; (4) Wilson's constructive discharge claim fails because she has not demonstrated a hostile work environment; and (5) Wilson's retaliation claim fails because she has not established that she engaged in protected activity. Therefore, Family Dollar's motion for summary judgment is granted in all respects.

The clerk of the court is directed to close this case.


Dated: Brooklyn, New York
       September 25, 2008

                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge